Matilda Prather *vs.* City of Lexington.

ERROR TO FAYETTE CIRCUIT.

Judge SIMPSON delivered the opinion of the court.

CASE.

Case 43.

January 27.

13m559
89  281
13m559
98  278
98  679
13bm559
o115  11
o115  12
115  386
13bm559
117  523
13m559
135  575

1. There exists no principle of law which subjects a municipal corporation to responsibility for injuries to property within its territorial limits, by a mob.
2. The officers of a city are *quasi* civil officers, and are responsible for malfeasance or nonfeasance in office; but the corporation is not responsible.

This was an action on the case brought by Matilda Prather against the city of Lexington, for an injury she sustained in the partial destruction of a dwelling house belonging to her, and situated within the city, by the violence of a mob.

She alleged in her declaration, that a mob, consisting of a large assemblage of persons wholly unknown to her, collected in and about her dwelling house, and with force and violence injured and defaced the doors, windows, floors, and various other parts of the building to such an extent as to render it entirely uninhabitable; and that the city of Lexington, by and through her mayor and other officers, neglected, failed, and refused to call in requisition the law, in order to protect her property from the violence of the mob, and willfully and wantonly neglected and refused to suppress it, although apprised of its existence and its unlawful conduct in the destruction of her property. A demurrer to the declaration having been sustained, and a judgment rendered against her by the court below, she has prosecuted a writ of error to reverse the judgment.

The act to incorporate the city of Lexington vests in the mayor and city council the fiscal, prudential, and municipal concerns of the city. It authorizes them to pass all needful by-laws for its government, to appoint a city marshal, and to employ as many watchmen as they may, in their discretion, deem ne-

cessary for its safety and advantage. It constitutes the mayor of the city the chief executive officer of the corporation, and makes it his duty to be vigilant and active at all times in causing the laws and ordinances of the city to be duly executed and put in force. And it makes the watchmen conservators of the peace, and vests them with power to apprehend all felons, rioters, breakers or disturbers of the peace, and all persons of riotous and disorderly conduct, and to carry them before the mayor or some justice of the peace, to be dealt with according to law. These are all the provisions of the act that have any bearing upon the question of the liability of the city for the injury sustained by the plaintiff; there is nothing contained in the act expressly subjecting the city to a responsibility for the depredations of mobs, or making it liable for the official conduct of its officers.

The action, it will be perceived, is not brought against any of the city officers to hold them responsible for an injury sustained by the plaintiff in consequence of a failure upon their part to discharge a duty legally incumbent upon them, but it is brought against the city, in its corporate capacity, to hold it responsible for the supposed misconduct of its officers.

Where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual. But as a general rule a corporation is not responsible for the unauthorized and unlawful acts of its officers, although done under the color of their office; to render it liable, it must appear that it expressly authorized the acts to be done by them, or that they were done in pursuance of a general authority to act for the corporation, on the subject to which they relate. (*Thayer* v. *Boston*, 19 *Pick*. 511.) It has also been held that cities are responsible to the same extent, and in the same man-

ner, as natural persons for injuries occasioned by the negligence or unskilfulness of their agents in the construction of works for their benefit. (*Ross* v. *City of Madison*, 1 *Smith*, 98 ; *Mayor of Memphis* v. *Lasser*, 9 *Hump*. 757.) And where a city corporation is bound to keep the streets and sewers of the city in proper repair, it is liable to damages if any person be injured by its neglect to have such repairs made. (*The Mayor &c.,* v. *Furze*, 3 *Hill*, 612 ; *Mayor of Linn* v. *Turner*, *Cowp*. 86.)

Still, the question in this case is not whether the city in its corporate capacity is liable for an act done under its express authority, or for its own omission of a duty that is direct and absolute, and due from it as a corporation, such as the repairing of its streets, sewers, &c., but whether, although there is no provision in its charter subjecting it to liability for the acts of a mob, it is rendered liable therefor by the failure of its officers, to suppress it.

We know of no principle of law, that subjects a municipal corporation to a responsibility for the safety of the property within its territorial limits; nor has any case been cited in which such a principle has been recognized or established. If such a liability exist, what is its nature and extent? Does it afford protection against the acts of the incendiary and the midnight depredator, or only against the violence of a lawless mob? If against the latter only, and not against the acts of the others, whence arises the distinction? All the acts may be alike injurious, and if the corporation must secure the property of its members, in all events, against all unlawful violence, there is no room for discrimination, but a similar liability would exist in each of the cases mentioned. There is nothing in the nature or design of a municipal corporation that imposes such a duty upon it. The chief purpose of such an institution is the adoption of such measures of police as will promote the comfort, convenience, and general welfare of the inhabitants within the city, and by local laws adapted to

1. There exists no principle of law which subjects a municipal corporation to responsibility for injuries to property within its territorial limits, by a mob.

the condition of a dense population, to impart effi-ciency to the local government.

It is not contended, however, as we understand the argument, that the city is answerable for injuries to property which could not have been prevented by her officers, if they had discharged their duty, but the proposition contended for is, that she is responsible, in her corporate capacity, where an injury to property has occurred that might have been prevented by her officers, if they had faithfully exercised the powers with which the law has invested them. On the other hand, it is contended that the duty of the city was ful-filled and the law complied with on her part when she appointed a marshal and a competent number of watchmen, according to the charter, and passed the needful by-laws for punishing and suppressing breach-es of the peace and disorderly conduct; and that a failure by the officers to do their duty, does not de-volve any liability upon the corporation.

If the city be liable in her corporate capacity for the outrage committed by the mob, which occasioned the injury to the plaintiff's property, it can only be upon the ground that the existence and lawless inten-tion of the mob were known to the mayor or marshal of the city, and that they neglected or refused to use any means or to make any efforts to prevent the perpetration of the unlawful act, which could have been prevented by them. The plaintiff's declaration fails to allege that the existence of the mob and its intention were known to either of these officers, or that any application was made to them for their as-sistance on the occasion; but merely alleges that the city of Lexington, by and through her officers, failed and refused to suppress the mob, "although well knowing of the same." The allegation appears to be that the existence of the mob was known to the city, but how or in what manner she had this know-ledge is not stated; but if it is to be understood, as an allegation that she had this notice through the me-dium of her officers, then it should have been shown

how and when, and to which of the officers the notice was given. The declaration, therefore, is in this respect defective, even if the liability contended for rests on the city.

But we place the decision of the question arising upon the demurrer to the plaintiff's declaration upon broader ground. The officers of a city are *quasi* civil officers of the government, although appointed by the corporation. They are personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible. Omissions of a duty imposed upon them by law, productive of prejudice to an individual, is not a corporate injury. The duty of the officers of the city is prescribed by the statute, from which also they derive their power. The corporation appoints them to office, but does not in that act sanction their official delinquencies, or render itself liable for their official misconduct. The tenure of the office of mayor is fixed by the statute; he is commissioned by the Governor of the commonwealth, and the corporation has no power to remove him. It would therefore be unreasonable that the city, in its corporate capacity, should be responsible for his omissions of duty. There are cases in which cities are made responsible for the depredations of mobs, by special legislation upon the subject. And in England local communities are made liable by statute to the party injured, in certain cases, for robberies and some other felonies committed within the hundred. But this liability is imposed for the purpose of having offenders against the law brought to justice, and only exists when the felon has not been apprehended. It is not created for the benefit of the party injured, or imposed because the inhabitants of the hundred did not prevent the commission of the felony, but because they did not arrest the felon; and when an arrest is made, they are not liable for the injury. But no case has been cited, nor are we apprised of any, in which it has been held that a municipal corporation is liable for the mere failure of

its officers to discharge a duty which the law imposes upon them. Our conclusion, therefore, is, that the present action cannot be maintained against the city of Lexington; and this conclusion is sanctioned by the authority of the case of *Martin* v. *Mayor, &c. of Brooklyn*, 1 *Hill's Reports*, 545, in which the same doctrine was established. Wherefore the judgment is affirmed.

*Robertson* and *Woolley*, for plaintiff; *Robinson & Johnson*, for defendants.