**LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Appellant,**

v.

**Dr. Philip E. KIRK, Appellee.**

Court of Appeals of Kentucky.

May 7, 1965.

Raymond F. Bossmeyer, James G. Becker, Louisville, for appellant.

Harry L. Hargadon, Sr., Henry V. B. Denzer, Louisville, for appellee.

STEWART, Judge.

This action was instituted by appellee, Dr. Philip E. Kirk, to recover damage to his residence at 739 Southwestern Parkway in the City of Louisville allegedly resulting from the breach of an easement contract by appellant, Louisville and Jefferson County Metropolitan Sewer District (hereinafter referred to as "Metropolitan"), in failing to properly maintain a sewer beneath the house. The case was heard by a jury and resulted in a verdict and judgment of $13,-000 for appellee.

In July of 1909, L. Simon and Lucy Simon conveyed an easement to the Commissioners of Sewerage of Louisville. Metropolitan was created and organized pursuant to KRS Chapter 76 enacted by the General Assembly in 1946; and that same year it took over from the Commissioners of Sewerage the Louisville sewer system, succeeding to all assets, rights, obligations and contracts of its predecessor.

Under a pretrial order it was stipulated, among other things, that liability, if any, arose solely from the 1909 contract whereby appellee's predecessors in title granted an easement for the construction and maintenance of a sewer and that Metropolitan, which was not a party to the contract, could only be liable on an implied contract pursuant to KRS 76.070(1), under the provisions of which it assumed operation of the Louisville sewer system.

On the trial it was shown a monolithic-cast concrete sewer, five feet in diameter, was constructed in 1910 upon the easement granted. Between 1921 and 1931 the sewer was covered with twelve to fifteen feet of earth to make the land level with the street. In 1933 or 1934 a two and one-half story residence was erected above the sewer and in 1946 it was purchased by appellee. In 1952 Metropolitan repaired some deterioration on the inside of the sewer and in that same year appellee's residence began to show signs of structural damage.

It is appellee's theory that the defective condition of the sewer caused a leakage into it and that this leakage carried with it soil from beneath his residence until portions of the house sank, resulting in the damage for which he seeks recovery in this action.

In support of this theory a registered engineer and architect testified his examination of the interior of the sewer beneath appellee's property showed it was in a bad state and that there was a leakage into it. In this connection he stated: "* * * there were cracks across the top, there was water dripping into the sewer from the top, and there was some steel exposed." A civil engineer gave as his expert opinion that the damage to the residence was caused by abnormal settling due to a carrying away of the subsoil over the sewer, thus lessening the density of the material over it and causing the soil to give away to pressure from above. Appellee testified that when he purchased the property in 1946 there were no observable structural defects in it, but in 1952 a corner of the basement garage floor dropped about two inches and subsequently there was considerable cracking, warping and twisting of different parts of the house.

Metropolitan's theory is that appellee's damage was due to a subsidence of the fill upon which his residence was located and that this had been caused or aggravated by the severe flood in 1937 which spread over this area. In support of this theory a civil engineer testified that in the neighborhood of appellee's residence he had observed depressions or sunken places in the earth's surface and also cracking in nearby houses which were not in the immediate vicinity of the sewer. It was his considered view as an expert that the settling of appellee's house was caused by its weight upon the fill which had been subjected to and weakened by flooding. A construction engineer testified his inspection of the sewer after the repairs in 1952 and again in 1957 demonstrated that it was tight and no water was coming into it from outside.

Metropolitan maintains the jury was permitted to speculate between conflicting inferences or conjectures as to the cause of the settling, with no more reason to accept appellee's than appellant's theory of causation, contrary to the rule stated in Fordson Coal Co. v. Whitt, 253 Ky. 484, 69 S.W.2d 992, and Kentucky Glycerine Co. v. Woodruff Development Co., 233 Ky. 325, 25 S.W.2d 736. However, the uncontradicted fact that appellee's damage began suddenly in 1952, at least twenty years after the fill was in place, eighteen years after the house was built and fifteen years after the flood, gives persuasive force to his argument as to why his house subsided. Furthermore, one of Metropolitan's witnesses, a civil engineer, indicated that any sinking which might occur to filled ground would become manifest within a reasonable time after the fill was made. Appellee asserts this evidence affords additional proof that the deteriorated condition of the sewer was the prime factor in causing the damage to his house. On this point we quote the following testimony of this witness:

"Q. Can you tell this jury, can you give any other explanation of the settling of this property, other than the defective sewer?

"A. Not if you rule out settlement in general, no sir.

"Q. You've already ruled out settlement, I believe, when you say that if this property remained

stable from 1934 until 1946, that the settling would not have produced the damage, didn't you?

"A. If the fill was stable for a period of twelve to fifteen years, then I would say that it would not settle in the future.

"Q. Would not the sewer's condition then be the only explanation?

"A. That I would have no way of saying.

"Q. Could you suggest to this jury what other condition could possibly have produced this damage?

"A. No, sir, not if you rule out—rule out settlement."

■ We conclude the jury had substantial evidence upon which to find that Metropolitan's failure to properly maintain the sewer involved in this case produced the damage to appellee's residence.

■ Metropolitan next asserts the trial judge erred in overruling its motion for a directed verdict for the reason that this action was essentially one based upon negligence and that, since Metropolitan has been held to be a governmental functionary, Gnau v. Louisville and Jefferson County Metropolitan Sewer District, Ky., 346 S.W. 2d 754, it is protected from liability for its torts by the doctrine of immunity. This defense is now unavailing because this doctrine was abolished in Kentucky, insofar as it attaches to a public agency such as appellant, by the recent case of Haney v. City of Lexington, Ky., 386 S.W.2d 738.

■ As it was stipulated in this case that the liability of Metropolitan could only be on implied contract created by statute (KRS 76.070(1)), Metropolitan insists it could not be held answerable for damage resulting from a breach of such an agreement, unless there was some overt act of negligence committed by it in repairing or reconstructing the sewer. Stated differently, Metropolitan maintains that, since there is no clause or condition in the easement contract requiring it to keep the sewer in good repair, it should not be adjudged guilty of wrongdoing for its failure to do so. This argument is untenable.

By reason of the language in the easement contract we are of the opinion a right of recovery existed for acts of omission as well as acts of commission upon the part of Metropolitan. The easement contract states that the sewer should be placed at a depth of not less than seven feet and the land used should not occupy a larger width than twelve feet. A right of ingress and egress at all times was reserved to repair or reconstruct the sewer. It also states: "Nothing herein contained shall operate to prevent or in any way interfere with the full use, occupation and enjoyment by first parties (the Simons), their heirs or grantees, of the surface of the property herein described and the subsurface not included in the easement specifically granted."

After providing how the sewer should be located, the easement contract states: "* * * that no damage shall be done by second party (Commissioners of Sewerage) or its successors in the right hereby granted, to improvements which may be made on or over the surface of the premises herein described or the subsurface not included in the easement specifically granted."

Thus it was contemplated that, after the sewer was installed, improvements of the type subsequently erected might be located on the easement over it. Therefore, how could the full use, occupation and enjoyment of any improvements so located be maintained if the grantee under the easement thereafter allowed the sewer to fall into disrepair so that injury resulted to such improvements? It would be meaningless to say that the property owner might construct a residence over the sewer and feel secure to live in it but that, if the residence were damaged by neglect on the

part of the one in control of the sewer, the property owner would be without a remedy. More than that, it appears to us a positive responsibility was imposed upon Metropolitan under the easement grant to see "that no damage should be done to improvements which may be made on or over the surface" of the easement. Under this clause, it would be under a duty to act to forestall an injury to any improvement built over the sewer.

Metropolitan maintains the trial court committed error in instructing the jury in giving numerical paragraph 2. This instruction in brief told the jury to award appellee such damage as would compensate him under the evidence for the depreciation, if any, in the market value of his house and lot, which directly resulted from the use of his ground by appellant in the operation and maintenance of the sewer. It is Metropolitan's view that the damage should have been limited to the difference between the market value of the property in good condition at the time of the injury and the market value of the property at the time of trial.

However, the appraisal witnesses for both Metropolitan and appellee testified that the damage which could be attributed to the complained of condition of the house was the difference between the value of the property at the time of the trial, if it were in good condition, and the value of it in its damaged condition.

■ We believe the instruction adequately submitted to the jury the damage issue raised in this case, namely, the amount, if any, appellee's property was reduced in market value as a direct consequence of Metropolitan's violation of appellee's rights contained in the easement contract. See Fidelity Trust Company v. Shelbyville Water and Light Company, 33 Ky. Law Rep. 202, 110 S.W. 239.

■ Metropolitan contends that the $13,000 verdict is excessive. We do not agree. The amount awarded is supported by competent evidence.

■ Although Metropolitan contends the trial judge erred in permitting counsel for appellee to make prejudicial and improper statements in his closing argument to the jury, we need not consider the merits of this contention since Metropolitan requested neither an admonition to, nor a discharge of, the jury, Meglemry v. Brunner, Ky., 344 S.W.2d 808, and received a favorable ruling on such objections as were made. See McCoy v. Carter, Ky., 323 S.W.2d 210.

■ It is urged that, when the trial judge sustained appellee's motion to permit the jury to view the premises, reversible error was committed in confining the inspection to appellee's property because this had the effect of forcing the jury to disregard Metropolitan's evidence relating to alleged subsidence in other areas located away from the sewer. KRS 29.301 provides in part:

"Whenever, in the opinion of the court, it is proper for the jury to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. * * *"

The trial judge determined that it would be impractical and beyond the purview of this statute to permit the jury to view other property merely because it was mentioned in the witnesses' testimony. Certainly this was a reasonable exercise of the discretion given the trial judge.

Wherefore, the judgment is affirmed.