## LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Appellant,

v.

## Brenda SIMPSON et al., Appellees.

Supreme Court of Kentucky.

April 30, 1987.

Richard M. Trautwein, Robert A. Winter, Jr., Gary L. Napier, Louisville, for appellant.

John T. Ballantine, Gregory J. Bubalo, James N.G. Cauthen, Ogden, Robertson & Marshall, Karl M. Walz, Louisville, Carroll House, Covington, Ralph H. Logan, Hardy, Logan & Priddy, Bruce P. Zalman, Richard H. Nash, Jr., Nash, Gildersleeve & Nash, Oliver H. Barber, Jr., Gittleman & Barber, B. Hume Morris, II, Morris, Nicholas, Welsh & Vandeventer, Brian K. Darling, Edward A. Mayer, Louisville, for appellees.

STEPHENSON, Justice.

The trial court granted the Louisville and Jefferson County Metropolitan Sewer District a partial summary judgment on the basis of sovereign immunity. The Court of Appeals reversed for a trial on the merits. We granted discretionary review and reverse the decision of the Court of Appeals.

The Metropolitan Sewer District maintains storm and sanitary sewer facilities for the City of Louisville and Jefferson County. The District was created pursuant to KRS 76.010 which provides:

> In the interest of the public health and for the purpose of providing adequate sewer and drainage facilities in and around each city of the first and second classes and in each county containing such city, there may be created and established a joint metropolitan sewer district under the provisions of KRS 76.010 to 76.210, having the powers, duties and

functions as herein prescribed, to be known by and under the name of ...... (Name or city of the first or second class) and ....... (Name of county) metropolitan sewer district, which district under that name shall be a public body corporate, and political subdivision, with power to adopt, use, and alter at its pleasure a corporate seal, sue and be sued, contract and be contracted with, and in other ways to act as a natural person, within the purview of KRS 76.010 to 76.210. (Enact. Acts 1946, ch. 104, § 1; 1968, ch. 152, § 50.)

In accordance with the provisions of KRS 76.090(2), the District finances its public health responsibilities through user charges approved by both the county and the city. It is governed by a Board jointly appointed by the county and the city under authority of KRS 76.170.

The District constructed a facility in southwest Jefferson County with sluice gates which open to allow water to be diverted to the Ohio River during heavy rainfall. This lawsuit was occasioned by flooding of appellees' property when the sluice gates failed to open after a heavy rainfall. The appellees allege that the District negligently designed, maintained, and operated the sluice gates, the result of which caused damage to their property by flood waters. The trial court dismissed the claims of the appellees against the District on the basis of sovereign immunity. The Court of Appeals reversed for a trial on the merits, relying upon *Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144 (1985). We are of the opinion that the holding in *Gas Service* does not apply to the present case. *Gas Service* held that a city (municipal corporation) is no longer immune from suit for tort liability. The line of cases overruled in *Gas Service* involved cities. The District here is not a city. In *Gnau v. Louisville and Jefferson County Metropolitan Sewer District*, Ky., 346 S.W.2d 754 (1961), we held that the District was an agency of the state with the immunity of the Commonwealth. *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407 (1967), held that Jefferson County is a political subdivision of the Commonwealth and, as such, is an arm of the state government and that it, too, is clothed in sovereign immunity.

The legislature, by statute, has declared the District to be a *political subdivision*. It is, at least, partially an arm of the county. Whatever the District may be, it is not a city, and we are of the opinion *Gas Service* should not be extended to cover the District and strip it of immunity to tort liability.

As a matter of policy, the long-standing immunity of the District will not be disturbed by this court in the absence of a change in policy by the legislature.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

STEPHENS, C.J., and GANT, STEPHENSON and VANCE, JJ., concur.

LAMBERT, LEIBSON and WINTERSHEIMER, JJ., dissent and file separate dissenting opinions.

LAMBERT, Justice, dissenting.

In *Gnau v. Louisville & Jefferson County Metropolitan Sewer District*, Ky., 346 S.W.2d 754 (1961), we held that the limited waiver of immunity of the Board of Claims Act did not include MSD. The Court stated:

[T]he waiver of immunity attaches only to those agencies which are under the direction and control of the central State government and are supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury.

As MSD was not such an agency, we held that it was not subject to the jurisdiction of the Board of Claims.

Later in *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (1964), this Court abolished municipal tort immunity except for legislative or judicial functions. Prior to *Haney*, we held in *Rash v. Louisville & Jefferson County Metropolitan Sewer District*, 309 Ky. 442, 217 S.W.2d 232 (1949) that:

The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a "municipality."

Relying on *Haney, supra,* we held in *Louisville & Jefferson County Metropolitan Sewer District v. Kirk,* Ky., 390 S.W.2d 182 (1965):

Metropolitan next asserts the trial judge erred in overruling its motion for a directed verdict for the reason that this action was essentially one based upon negligence and that, since Metropolitan has been held to be a governmental functionary, *Gnau v. Louisville and Jefferson County Metropolitan Sewer District,* Ky., 346 S.W.2d 754 [(1961)] it is protected from liability for its torts by the doctrine of immunity. This defense (municipal tort immunity) is now unavailing because this doctrine was abolished in Kentucky, insofar as it attaches to a public agency such as appellant by the recent case of *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 [(1964)].

If any doubt remained as to the abolition of municipal tort immunity in *Haney,* such was removed by our holding in *Gas Service Co., Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985).

MSD now comes before this Court arguing that it is entitled to immunity as a quasi-municipal corporation and relies upon *Fawbush v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 240 S.W.2d 622 (1951). In view of *Rash* and *Kirk,* I disagree with this contention.

On the basis of the majority opinion in the case at bar and *Gnau,* MSD has achieved the exalted status of being immune from liability for its tortious conduct in any forum. I do not believe this is an accurate interpretation of the legislative act authorizing the creation of MSD or of the Constitution of Kentucky.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent. Reading the majority and other dissenting opinions clearly shows that the beat-goes-on. The scope of governmental immunity is far from being resolved. The ink is barely dry on *Gas Services Co. Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985) and the exceptions predicted in the dissent begin and certain immunities were preserved in *Gas Services* itself.

It is my opinion that we should adhere to the *Gas Services, supra,* decision to provide stability in the law despite the debatable proposition as to whether a municipal corporation as a generic entity is stripped of immunity or if liability attaches only to a city as a municipal corporation. For good or ill, *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1964) set the pattern and *Gas Services* followed it. Another reason I dissent is because the affirmation of a partial summary judgment does not contribute to the disclosure of the identity of the tortfeasor if any exists. The dissent in *Gas Services* properly acknowledged the limited concept that liability follows negligence and suggests that a case could be tried against the actual individual committing the tort. The legal process should seek the true wrongdoer, if any.

In my view, individual responsibility has been overlooked in the rush to find a deep-pocket. Any corporation, municipal or otherwise, can act only through its agents or employees. Recovery should first be sought against the active wrongdoer. The conduct of those agents and employees must first be examined before any claim can be sustained against the principal corporation. Therefore, I would not affirm a summary judgment in this field which has not included a careful review of the responsibilities of both principal and agent or employee. In this case, the manufacture and design of the sluice gates may also play an important role in ascertaining responsibility.

Cities should not be treated differently from other governments, special districts or municipal corporations. If the conduct complained of amounts to negligence and is not protected by the exercise of valid legislative or executive judgment, then liability could result.

As I noted in my concurring opinion in *Gas Services,* the only valid exercise of government which should be exempt from tort liability is the purely administrative or legislative decision-making process. Redress from the exercise of poor judgment is at the ballot box. Compensation for the failure to exercise ordinary care under all the circumstances is obtained by damages.

The ultimate answer may be from the general assembly which might aid the people who have incorporated into municipalities by enacting a realistic and comprehensive tort claims act which would recognize the specific differences of particular units of government, acknowledge the source of funds as tax money or service charges and provide for a method of compensation to victims of wrongful conduct.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Shakespeare described brevity as the soul of wit. This may be true in many situations, but the majority opinion in this case is not one of them. The opinion is barely two and half pages, double spaced, and fails both to address the facts of the case and to offer reasoned analysis of the law applicable to those facts. Brevity is no virtue when it obscures or omits the *ratio decidendi.* The brief opinion in the present case papers over the cracks by failing to address them. We will do so in this dissent.

This is a class action on behalf of persons who were victims of flooding of their property located in southwest Jefferson County, flooding allegedly caused by the negligence of the Louisville and Jefferson County Metropolitan Sewer District ("MSD") in the maintenance and operation of its facilities. Their property is within MSD's Southwestern Outfall Drainage area.

This case was decided in the trial court on summary judgment for the defendant, MSD, so for purposes of our decision we must take as true the facts as presented by the plaintiff. CR 56. Those facts are as follows:

Appellees are members of a class of nearly 2,000 persons who own property located in the low lying terrain near the Bells Lane and the Belquin/Penway areas of Jefferson County and Louisville, Kentucky. This property was flooded on May 1, 1983 by the malfunction of MSD's sluice gates at its Southwestern Pumping Station. This was the *second* occasion that this flooding had occurred, having previously occurred on December 6, 1977, for practically identical reasons.

The sluice gates were built in 1975 to prevent flooding of MSD's own property at its Southwestern Pumping Station. Before the construction of the gates in 1975, the appellees bore no practical risk of flooding. Before 1975, if the volume of storm water and sewage in the drainage area exceeded the capacity of the pumping station, the pumps would shut down and the storm water and sewage would flow over a diversion weir (a low dam) in the outflow sewer and from there on to the Ohio River.

In 1975 the sluice gates were designed and built to close to protect MSD's facilities. The appellees' evidence is that both the 1977 and 1983 floods were caused by two basic defects in the sluice gates which (1) caused the electric motors to fail at a certain stage and (2) provided no backup system to assure that the gates could then be quickly opened or bypassed in some other manner. In such a situation, because of the backup of drainage, flooding will occur almost inevitably. There is no method available for opening the gates except by sixteen hours of hand cranking.

The 1977 flood provided MSD with *actual* notice of the defects in its sluice gates. Nonetheless, MSD failed to correct these defects, which resulted in the appellees' being flooded a second time on May 1, 1983. After the 1977 flood MSD's liability insurer[1] analyzed the sluice gate "system" and made several recommendations in an attempt to prevent a similar flood from

---

1. MSD presently has a different liability insurer. If we sustain the argument that it has "sovereign immunity," we have placed that insurance company in the enviable position of selling insurance that pays no benefits.

occurring in the future. These recommendations were largely ignored by MSD.

This case was decided at the trial level before our recent decision in *Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144 (1985). The *Gas Service Co.* case reaffirmed our holding in an early case, *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (1964), abolishing municipal immunity from tort liability except for "a narrowly defined exception to liability" for legislative or judicial functions, a "narrow exception" which is not involved in the present case, not even remotely.

The fact situation in the *Gas Service Co.* case fits squarely with the present case because both involve negligent installation and maintenance of a sewer facility maintained by a municipal corporation, one a city and the second a local sewer district. The only arguable distinction is that MSD is not a municipal corporation. This is an argument long since disposed of in *Rash v. Louisville and Jefferson County Metropolitan Sewer District*, 309 Ky. 442, 217 S.W.2d 232 (1949), the landmark case establishing the constitutionality of this type of governmental agency, sewer districts, and defining their status as "distinct municipal corporations." 217 S.W.2d at 236.

> "The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a 'municipality.'" *Id.*

Tort liability for a municipally operated sewer system has not been barred by any form of governmental immunity since it was abolished in the *Haney* case. 386 S.W.2d at 740. It was partially resurrected in a different guise in *City of Louisville v. Louisville Seed Co.*, Ky., 433 S.W.2d 638 (1968), which has now been recognized as specious and overruled in the *Gas Service Co.* case. 687 S.W.2d at 148–50.

Before *Haney* a municipal corporation had a limited form of governmental immunity for certain activities court classified as "governmental" rather than "proprietary" in nature. This was a judicially created common law type of immunity, *not* connected in any way to the concept of state sovereign immunity, a type which our Court has recognized as constitutionally protected by our Kentucky Constitution, § 231.

At the trial level the present case was decided before our Supreme Court decision in the *Gas Service Co.* case. The Court of Appeals reversed the decision, and quite properly so, in conformity with our holding in *Gas Service Co.* Now in our Court the majority disavows our recent holding in the *Gas Service Co.* case before the ink is dry. Its language is inherently contradictory:

> "Gas Service held that a city (municipal corporation) is no longer immune from suit for tort liability.... The District here is not a city." p. 940.

The term "municipal corporation" is put in parenthesis after the word "city" as if "city" and "municipal corporation" were coextensive, and a "city" is the only form of "municipal corporation." On the contrary a "municipal corporation" means nothing more than a local government entity created by the state to carry out "designated" functions. *Rash v. Lou. & Jefferson Co. Met. S. District, supra* at 236. Not until now have we ever suggested that a city is the *only* form of municipal corporation, and to so state is *expressly* contrary to the holding in *Rash.* Quite obviously the present case doesn't turn on the fact that MSD is not a city as was the appellee, *City of London*, in the *Gas Services Co.* case, because this qualifies as a distinction without a difference.

Our Court in *Haney, supra*, in 1964, set its course squarely against the common law doctrine of governmental immunity, except in the limited situation where the Kentucky Constitution requires it:

> "'There is probably no tenet in our law that has been more universally berated by courts and legal writers than the governmental immunity doctrine.'
>
> ... [W]hen a theory supporting a rule of law is not grounded upon sound logic, is not just, and has been discredited by actual experience, it should be discarded, and with it, the rule it supports.... The rule of governmental immunity for tort

is an anachronism, without rational basis, and has existed only by the force of inertia.' " 386 S.W.2d at 739.

Taken as true, the facts of the present case represent serious wrongdoing by a local government entity, MSD, causing extensive damage to its neighbors, wrongdoing that shall go uncompensated because we now extend § 231 of our Kentucky Constitution to require such a result. However, the express language of § 231 provides only:

"*Suits against the commonwealth.* —The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

Does the word "Commonwealth" in § 231 cover municipal corporations? Only if we disregard the historical distinction between sovereign states and local governmental entities. *Restatement (Second) of Torts,* §§ 895B and 895C. And only if we disregard § 231's constitutional genesis as a corollary to § 230. See Debates, Constitutional Convention 1890, Vol. 4, pp. 5977, 6048.

Section 231 is juxtaposed upon Section 230, which provides in its inception:

"*Money not to be drawn from treasury unless appropriated*—No money shall be drawn from the State Treasury, except in pursuance of appropriations made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published annually." [2]

Section 231 was intended to provide a window of opportunity to the General Assembly to use to waive the state's sovereign immunity, so that "suits may be brought against the Commonwealth" without violating § 230. It says nothing *per se* about sovereign immunity, and nothing even by inference about municipal immunity. It defies logic to infer from § 231 intent to constitutionalize sovereign immunity for local governmental entities which do not fall within the term "Common-

wealth," entities which are not funded by money "drawn from the *State Treasury.*" When § 231 refers to the "Commonwealth," it is only logical to assume it means agencies of the "Commonwealth" funded from the same "State Treasury" referred to in § 230. MSD is, of course, a governmental entity funded independently of the "State Treasury."

The General Assembly was given power in the Constitution to waive common law state sovereign immunity, an immunity which derived from our legal inheritance from the sovereign power of the King of England. On the other hand, in 1891 municipal corporations were already well recognized as a horse of a different color. In *Prather v. City of Lexington,* 52 Ky. (13 B. Mon.) 559, 560 (1852), our Court stated:

"Where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual."

*Prather* upheld liability for failure to keep "sewers of the city in proper repair." Our constitutional forebearers would be astonished to find that we now find in the words of § 231 an intention to extend state sovereign immunity to shield a municipal corporation from responsibility for the consequences of its own wrongdoing. Section 231 was written with the state and the State Treasury in mind, and nothing else can be reasonably inferred.

Those among us with passing familiarity with the proceedings of our 1890 Kentucky Constitutional Convention acknowledge that the moving force behind the wording of the various provisions of our state constitution was to protect our people from abusive exercise of power by the government. There was no intention to provide governmental agencies with the means to wrong our citizens with "immunity." The published Debates from the Constitutional Convention of 1890 are replete with exam-

---

**2.** This is § 230 as adopted in 1891. Some additional restrictive language relative to restricting the use of money derived from gasoline taxes and motor vehicle fees was added by an Amendment ratified in 1945.

ples of this underlying philosophy, with no voice to the contrary. *See* Debates, *Constitutional Convention*, 4 Volumes, *supra.*

All this has been better stated by Justice Palmore in his dissenting opinion in *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407, 411 (1967), "sovereign immunity should be limited strictly to what the Constitution demands, for the simple reason that in a civilized society it is morally indefensible."

The majority opinion in the present case cites the *Cullinan* case as authority for the fact that our Court has held that county government, as well as state government, is protected by state sovereign immunity. It is debatable that this holding can be constitutionally justified, but, nevertheless, there is a *bright line* distinction between counties, which are historical units preexisting the Commonwealth, and municipal corporations which owe their existence to an act of the General Assembly. The county as a unit of government and a "sovereign" of sorts existed long before the state was formed. The distinction between municipal corporations and counties is recognized and commented on in *Restatement (Second) of Torts,* § 895C, Comment a:

"Under the governmental structure of some States, however, certain types of geographic subdivisions, such as counties and school districts, have been held to be entitled to any broader immunity (either from suit or from tort liability) that has been retained for the State itself, rather than being subjected to the type of liability that is applicable to cities and towns."

It is not inconsistent with the *Cullinan* case to classify MSD as a municipal corporation liable for its torts because there is an historical (if illogical) precedent for treating the county differently from other local government entities created by the State. However, it is both morally and logically indefensible to deny MSD's status as a municipal corporation, as we so held in the *Rash* case, or to provide it immunity when it was negligent in the same manner for which the City of London was held liable in the *Gas Service Co.* case.

No case in Kentucky has ever held MSD, or a like entity, to be immune under § 231. On the other hand, since *Haney v. City of Lexington, supra,* there is at least one case holding a local entity like MSD subject to tort liability rather than immune from it. In *Stephenson v. Louisville & Jefferson Co. Board of Health,* Ky., 389 S.W.2d 637 (1965), the Louisville & Jefferson Co. Board of Health was sued for negligence in the delivery of hospital services. Our Court expressly rejected the same argument which MSD now presents, the claim that *Haney* did not apply because the Board of Health was a subdivision of the State and partially of county government. In *Stephenson* we state:

"It seems clear that the Board of Health is a municipal corporation. 37 Am.Jur., Municipal Corporations, § 3 (p. 618). *In this respect it is in the same category as the Louisville & Jefferson Co. Metropolitan Sewer District* and the Louisville & Jefferson Co. Air Board. See *Rash v. Louisville & Jefferson Co. Met. S. Dist.,* 309 Ky. 442, 217 S.W.2d 232 [ (1949) ]; *Johnson v. City of Louisville,* Ky., 261 S.W.2d 429 [ (1953) ]; *Louisville & Jefferson Co. Air Board v. American Air Lines, Inc.,* D.C., 160 F.Supp. 771 [ (1958) ] (rev'd on other grounds, 6th Cir., 269 F.2d 811) [ (1959) ]. Since it is such a governmental unit, it falls squarely under the decision in *Haney v. City of Lexington,* Ky., 368 [386] S.W.2d 738 (decided May 22, 1964), and consequently cannot claim governmental immunity." 389 S.W.2d at 638. [Emphasis added.]

Considering the fact that the holding in the *Stephenson* case is that the state's governmental immunity does *not* extend to the Board of Health, and that "it is in the same category as the Louisville and Jefferson County Metropolitan Sewer District," it is difficult to accept that the majority opinion fails to address the case.

Another 1965 case, *Louisville & Jefferson County Met. Sew. Dist. v. Kirk,* Ky., 390 S.W.2d 182 (1965), also makes the point that MSD, as a municipal corporation was and is liable under *Haney:*

"Metropolitan [MSD] next asserts the trial judge erred in overruling its motion for a directed verdict for the reason that this action was essentially one based upon negligence and that, since Metropolitan has been held to be a governmental functionary, *Gnau v. Louisville and Jefferson County Metropolitan Sewer District*, Ky., 346 S.W.2d 754 [ (1961) ] it is protected from liability for its torts by the doctrine of immunity. This defense is now unavailing because this doctrine was abolished in Kentucky, insofar as it attaches to a public agency such as appellant, by the recent case of *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 [ (1964) ]." 390 S.W.2d at 185.

MSD claims that this paragraph in the *Kirk* case is only dicta. There were two theories of liability pursued in the *Kirk* case, one tort and one contract, and whether liability was premised on one or the other, or both, is not clear. What is clear is that the quoted paragraph is squarely in point in the present case, and the majority opinion has simply ignored it.

The majority opinion relies for authority primarily, if not exclusively, on *Gnau v. Louisville & Jefferson County Metropolitan Sewer District*, Ky., 346 S.W.2d 754 (1961). *Gnau* was decided before the *Haney* case. While there is language in the *Gnau* case which seems to support MSD's position, the truth is that the *Gnau* case decided a different issue and the *holding* in the *Gnau* case should lead us to the opposite conclusion. *Gnau* did not hold that the claimant could not sue MSD for negligence in a court of law. It held that the claimant could not seek damages from MSD in the Board of Claims. The stated reason for the holding was that the jurisdiction of the Board of Claims under the Act was limited to "negligence on the part of the Commonwealth [and] any of its departments or agencies," and MSD did *not* qualify as "a state agency as the term is employed in KRS 44.070," the Board of Claims Act. The court states:

"[T]he waiver of immunity [in the Board of Claims Act] attaches only to those agencies which are under the direction and control of the central State govern-

ment and are supported by monies which are disbursed by authority of the Commissioner of Finance out of the State Treasury."

Thus the *Gnau* case decided that MSD is *not* an agency of "central State government" funded "out of the State Treasury," covered by sovereign immunity which was partially waived in the Board of Claims Act. It is true that the court comments in the *Gnau* opinion on the fact that MSD is "a public agency performing a governmental function and thus entitled to immunity from liability for its negligence," but this is referring to the immunity formerly enjoyed by a municipal corporation when "performing a governmental function," for which it cited *Fawbush v. Louisville & Jefferson County Met. Sew. Dist.*, Ky., 240 S.W.2d 622 (1951). MSD's immunity as a municipal corporation performing a governmental function, recognized in *Fawbush* and referred to in *Gnau*, was abolished in 1965 in the *Haney* case. Once again, the majority opinion in the present case simply fails to address these pertinent facts.

A fair reading of the *Gnau* opinion leads to only one conclusion, viz., when it refers to MSD as a state agency, it means only in the broad sense that every municipal corporation is a state agency because the state is the sovereign that creates *municipal corporations*. What *Gnau* really says about these municipal corporations is this:

"They are all indeed agencies of the State in that they perform the particular governmental duties delegated to them, but at the same time they are fairly insulated from the day to day control of the central government and, on the other hand, the state treasury, from which this claim is sought to be paid under the statute here, is fairly insulated from the demands made upon these public corporations." 346 S.W.2d at 755.

The claim that the decision in the present case is consistent with authority simply cannot be documented. This case will not be viewed by the legal community as the application of *stare decisis*. Analysis of the holding in *Gnau* should lead to the

opposite result than the one reached in this opinion. When *Gnau* refers to MSD's immunity from tort liability, it refers to "common law immunity" not constitutional immunity, and common law immunity for municipal corporations went out with *Haney v. City of Lexington* in 1965, unless the majority has decided to resurrect it, *sub silentio*, in the present case.

It makes no sense to distinguish the present case from the *City of London v. Gas Services Co.* case. This kind of arbitrary immunization of a municipal corporation from the consequences of its wrongdoing can only encourage the abuse of power.

It is difficult to escape the conclusion that the reason underlying our decision in this case is not judicial deference to a constitutional principle but a misguided perception of financial expediency to protect the funds of municipal corporations. If the law is to take this direction, it is a major backward step. Turning again to Justice Palmore's warning in the *Cullinan* case:

> "The word 'shocking' is well said. It is inexcusable. I rest my case on the proposition stated long ago by one of the greatest human beings of all time: 'It is as much the duty of Government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuls.' First Annual Message by Abraham Lincoln, December 3, 1861, in 'The State of the Union Messages of the President, 1790–1966," Vol. II, p. 1060 (ed. by F.T. Israel, 1966)." 418 S.W.2d at 411–12.

The question is not whether municipal corporations think they can afford to pay their tort liabilities. The question is whether the legal system in a just society can afford to permit them to do otherwise.