**KENTUCKY CENTER FOR THE ARTS CORPORATION, Movant,**

v.

**Hendrik J. BERNS, Respondent.**

**and**

**Hendrik J. BERNS, Movant,**

v.

**KENTUCKY CENTER FOR THE ARTS CORPORATION, Respondent.**

Nos. 89–SC–898–DG, 90–SC–057–DG.

Supreme Court of Kentucky.

Dec. 27, 1990.

As Modified Jan. 17, 1991.

Richard G. Segal, Eileen Walsh, Louis-ville, for movant Ky. Center for the Arts.

C. Thomas Hectus, Ken Nevitt, Williams & Wagoner, Louisville, for respondent Berns.

LEIBSON, Justice.

In November, 1987, Hendrik J. Berns filed suit in Jefferson Circuit Court alleging he fell and sustained permanent injuries at the Kentucky Center for the Arts, 530 W. Main Street, Louisville, Kentucky, when a railing on the steps loosened and came out while he was attempting to use it for balance.

The issues in this case involve sovereign immunity: first, whether the Kentucky Center for the Arts Corporation is immune from liability for negligence as an agency of the Commonwealth; and second, if so, whether there has been a waiver of that immunity by reason of the purchase of liability insurance.

Initially, the answer failed to raise the sovereign immunity defense. Then, in March, 1988, the Arts Corporation moved to dismiss on grounds of sovereign immunity. The motion was sustained, and this appeal followed. The Court of Appeals sustained the decision of the trial court that sovereign immunity applied, but reversed the order of dismissal and remanded finding a waiver of sovereign immunity because the legislation creating the Arts Corporation provides in part that "revenues derived by the corporation from the use of the Kentucky Center for the Arts, or contributions ... shall be solely used to defray the expenses of the Kentucky Center for the Arts, including ... the procurance of insurance." KRS 153.430(3). The Court of Appeals relied principally on *Green River District Health Department v. Wigginton,* Ky., 764 S.W.2d 475 (1989) and *Taylor v. Knox County Board of Education,* 292 Ky. 767, 167 S.W.2d 700 (1942) in reaching this decision.

The Kentucky Center for the Arts Corporation moved for discretionary review claiming these two cases do not apply because of changes in the wording of the Board of Claims Act effective in 1986. Berns filed a cross-motion for discretionary review claiming that the Kentucky Center for the Arts Corporation is not an agency of the Commonwealth constitutionally protected by sovereign immunity. We granted both motions, and we now affirm on grounds the state's sovereign immunity does not extend to the Kentucky Center for the Arts Corporation.

## I. SOVEREIGN IMMUNITY

The decision when the sovereign immunity defense applies to an entity created by an act of the General Assembly has been historically troublesome to our Court, resulting in diverse decisions difficult to reconcile. At the heart of the matter is the tension between our constitutional provisions, Kentucky Constitution §§ 14, 54 and 241, protecting our citizens against legisla-

tive action to limit or deny access to the courts to pursue existing causes of action for personal injury and wrongful death, and our constitutional provision, Kentucky Constitutions § 231, interpreted through the years to constitutionalize the common law doctrine of sovereign immunity in suits brought against the Commonwealth. Section 231 limits sovereign immunity to "suits ... against the Commonwealth." The crux of the decisions to date has been that § 231 as a specific provision overrides §§ 14, 54 and 241 as general provisions, but *only* in suits which may be legitimately classified as "brought against the Commonwealth." *See Wood v. Board of Education of Danville,* Ky., 412 S.W.2d 877 (1967) and *Rooks v. University of Louisville,* Ky.App., 574 S.W.2d 923 (1978).

■ Where sovereign immunity exists, the General Assembly has the power of statutory waiver which it exercises through the Board of Claims Act. KRS 44.070 et seq. With this power of waiver comes the power to control the extent to which waiver shall be permitted. But, the General Assembly has no power to extend sovereign immunity beyond the limits of the area constitutionally protected by § 231. When it attempts to do so, it is in violation of the rights preserved to our citizens under §§ 14, 54 and 241. Our Court has performed its duty to protect our citizens against unlawful legislative intrusion upon their constitutional rights in a long line of cases, including *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959), *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973), and more recently, *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989). The only positive conclusion one can draw from the various cases is that the appropriate line separating persons and entities entitled to claim inclusion in the Commonwealth's sovereign immunity is not a line which the General Assembly may draw in its discretion, but a problem of constitutional law which our Court must address on a case by case basis. Where sovereign immunity exists by reason of the constitution, the General Assembly may extend or limit waiver as it sees fit, but where no constitutionally protected sovereign immu-

nity exists the General Assembly cannot by statute create it.

The Kentucky Constitution, § 231, does not by its express terms elevate common law sovereign immunity to the status of a constitutional principle. All it says is:

"The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."

But our Court has recognized this provision as constitutionally protecting sovereign immunity in "suits against the Commonwealth" because otherwise it has no meaning. From its genesis in the First Constitution of 1792, Article VIII, § 4, to the Fourth Constitution of 1891 (the present Constitution), the pronouncement has followed immediately in sequence a proviso that "no money shall be drawn from the state treasury but in consequence of appropriations made by law." The "Debates, Kentucky Convention 1849," pp. 628–30, confirm the tie-in between §§ 230 and 231 of the present Constitution. These two sections recognize the existence at common law of sovereign immunity and authorize the General Assembly, by general act, to establish a method for adjusting claims against the state government as an alternative to private, special legislation. The purpose of the second section in the sequence (now § 231) is to make it possible for the General Assembly to provide a formula to pay claims by general law from the state treasury without violating the first section. Without § 231, a statute permitting judgments against the Commonwealth to be paid out of the state treasury would violate the previous section. As stated in *Foley Construction Company v. Ward,* Ky., 375 S.W.2d 392, 393 (1964):

"Kentucky Constitution Section 230 complements Section 231. It contains prohibitions against withdrawal of money from the State Treasury.... [B]oth sections are intended to promote an orderly system for the disposition of public money."

Nothing in these two sections, nor in the records of the proceedings accompanying their enactment (which exist only for the

1849 and 1890 Conventions), presupposes any broad grant of sovereign immunity in the discretion of the legislature or beyond activities commonly understood as performed by central state government at the time the Constitution was enacted.

One of the earliest cases shedding light on this subject is *Gross v. Kentucky Board of Managers*, 105 Ky. 840, 49 S.W. 458 (1899), decided by a court with a contemporary understanding of the subject. The Kentucky Board of Managers of the World's Columbian Exposition was created by an Act of the General Assembly in 1893 "to provide for the collection and exhibition of the resources and evidences of progress of the State of Kentucky at the World's Columbian Exposition." Although the Act "expressly absolved" the state from liability for the actions of the Board, the Court stated:

> "The rule is well settled that the state cannot be sued,.... But this rule does not apply to a corporation created by the state for certain public purposes. If appellee was made by the acts referred to a corporation or a quasi corporation, we see no reason why it should be exempted.... It is true that this board has been called, in an opinion by this court, an 'agency of the state.' It was an agency of the state, but it was also vested with corporate powers, and in its corporate capacity it may be sued for its corporate acts, just as any other corporation.... The erection of a headquarters building and the running of a restaurant were matters of business, in which this board stood on the same plane as others engaged in like undertakings." *Id.* at 459.

*Gross* was a suit for damages for breach of contract. Sovereign immunity applied to breach of contract cases on the same footing as tort cases until the 1966 Act waiving its application. *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407 (1967).

As in *Gross*, the Kentucky Center for the Arts Corporation was not created to discharge any "governmental function" in the context in which § 231 of the Constitution was written. The Kentucky Center for the Arts Corporation is established in KRS 153.400–.460 pursuant to a finding of the General Assembly:

> "[T]hat cultural opportunities and the arts have a direct and positive impact on the hotel industry.... [W]ill serve as catalyst in the development of Louisville and Jefferson County as a major convention and entertainment center.... [W]ill have as management priority the stimulation of the Jefferson county hotel industry and promotion of tourism...." KRS 153.400.

KRS 153.410 provides the "[t]he Kentucky Center for the Arts Corporation ... shall consist of eleven (11) members representing metropolitan Louisville and Kentucky to be appointed by the governor, ... to four-year terms," who "may be removed by the governor only for cause after being afforded notice, [and] a hearing...." The "Corporation shall be a body corporate with full corporate powers." KRS 153.420 prescribes the powers and duties of the Corporation, including the power to issue "revenue bonds ... solely payable from the charges, revenues, rentals, and other funds pledged for their payment," to "levy a surcharge on tickets for all functions held within the center to contribute to operating revenue," and to "have exclusive control of all exhibitions, performances and concessions in the Center for the Arts."

KRS 153.430 provides, *inter alia*, "[a]ll revenues derived by the corporation from the use of the Kentucky Center for the Arts, or contributions ... shall be solely used to defray the expenses of the Kentucky Center for the Arts...." KRS 153.-440 provides "[i]n addition to the three percent (3%) transient room tax authorized by KRS 91A.390, fiscal courts in counties containing cities of the first class [i.e., Jefferson County only] may levy an additional transient room tax not to exceed one percent (1%)," and "[a]ll moneys collected from [this] tax ... shall be turned over to the Kentucky Center for the Arts Corporation, and shall be used to defray operating costs of the Kentucky Center for the Arts."

■ We recognize the difficulty of classifying entities for purposes of constitu-

tionally protected sovereign immunity. But certainly not every business can be immunized simply because it is established by act of the General Assembly, and this corporation performs substantially the same functions as any private business engaged in the entertainment business. We cannot perceive how a patron attending the Louisville Orchestra, which formerly performed at the Macauley Theatre and now performs at the Kentucky Center for the Arts, has been deprived by reason of the change in location of his right to maintain a common law action when he is negligently injured. The corporation furnishing the performance hall now is performing the same function that the corporation operating the Macauley Theatre did in the past. If we were to follow such reasoning, there would be no limitation on the scope of sovereign immunity. Every time the state gets involves in an enterprise formerly private the area of sovereign immunity would expand accordingly.

The respondent stated at oral argument that it will "stand" on the distinction verbalized in *Gnau v. Louisville & Jefferson Co. Metropolitan Sewer Dist.*, Ky., 346 S.W.2d 754 (1961). But *Gnau* will not support the respondent's argument. The issue in *Gnau* was *not* whether the claimant could sue Metropolitan Sewer District for negligence in a court of law. That was assumed. The issue was whether the claimant could proceed within the jurisdiction of the Board of Claims Act, an act limited by its terms to "negligence on the part of the Commonwealth [and] any of its departments or agencies." The holding in *Gnau* was that MSD did *not* qualify as "a state agency as the term is employed in KRS 44.070," the Board of Claims Act. The court states:

"[T]he waiver of immunity [in the Board of Claims Act] attaches only to those agencies which are under the direction and control of the central State government and are supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." *Id.* at 755.

The *Gnau* case regarded the limits of the Board of Claims Act and sovereign immunity as coextensive, and held the Act did not apply to MSD because it was not an agency of "central State government" funded "out of the State treasury."

We will *not* address in this Opinion whether or not the subsequent case of *Louisville & Jefferson Co. Metropolitan Sewer Dist. v. Simpson*, Ky., 730 S.W.2d 939 (1987) applied *Gnau* correctly. It suffices for present purposes to recognize that the fundamental premise stated in *Gnau* expresses both the reach of state sovereign immunity and the waiver of that immunity in the Board of Claims Act. It is:

"... only to those agencies which are under the direction and control of the central State government *and* are supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." [Emphasis added.] *Supra.*

This is a two-pronged test, the first consisting of the "direction and control of the central State government," and the second consisting of being "supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." The Kentucky Center for the Arts Corporation is not under the "direction and control" of the central state government but of its directors who are appointed for four year terms and act autonomously. They cannot be removed except for cause. Coupled with the fact that the purpose of the Arts Corporation is to provide entertainment, albeit in the name of promoting tourism and thus the economic welfare of Louisville and Jefferson County, these facts compel the conclusion that our constitutional fathers would not view this activity as qualifying for sovereign immunity.

 Municipal corporations are local entities created by act of the General Assembly and not agencies performing the services of central state government. As such they do not qualify for sovereign immunity. The term "municipal corporation" is not limited to a city, and it is not only a city that "is no longer immune from suit for tort liability" although there is lan-

guage in *Louisville Metro. Sewer District v. Simpson*, 730 S.W.2d at 940 that might be construed to suggest otherwise. On the contrary, as stated in *Rash v. Louisville & Jefferson County Metro. S. Dist.*, 309 Ky. 442, 217 S.W.2d 232, 236 (1949), a "municipal corporation" means nothing more than a local government entity created by the state to carry out "designated" functions. In *Stephenson v. Louisville & Jefferson County Bd. of Health*, Ky., 389 S.W.2d 637, 638 (1965), we held that "the Board of Health is a municipal corporation," and then stated:

> "Since it is such a governmental unit, it falls squarely under the decision in *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (decided May 22, 1964), and consequently cannot claim governmental immunity." *Id.*

■ The line between what is a state agency and what is a municipal corporation is not divided by whether the entity created by state statute is or is not a city, but whether, when viewed as a whole, the entity is carrying out a function integral to state government. We use by analogy the language in *Kentucky Region Eight v. Commonwealth*, Ky., 507 S.W.2d 489, 491 (1974), holding that sovereign immunity should extend only to "departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure." Kentucky Center for the Arts Corporation does not qualify for sovereign immunity under this concept.

## II. WAIVER

Having so decided, we need not reach the second question, which is whether, if sovereign immunity existed, it was waived by the language in KRS 153.430(3), quoted *supra*, directing "the *procurance of insurance*." [Emphasis added.]

The Court of Appeals based its decision to reverse the trial court's dismissal on this statutory language. But the 1986 amendments to the Board of Claims Act inveigh at length against the principle of implied waiver, including in KRS 44.073(14) a statement that "the purchase of liability insurance ... shall not be construed as a waiver of sovereign immunity or any other immunity or privilege." On the other hand, we note the distinction between *Taylor v. Knox County Bd. of Education*, 292 Ky. 767, 167 S.W.2d 700 (1942) and *Green River Dist. Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989), and *Kestler v. Transit Auth. of N. Ky.*, Ky., 758 S.W.2d 38 (1988), cases deciding there was a statutory waiver because of statutes authorizing or directing the purchase of liability insurance, and a case such as *Moores v. Fayette Co.*, Ky., 418 S.W.2d 412 (1967), where there was no statute mandating or permitting the purchase of liability insurance. Based on this distinction, the Court of Appeals decided here there was a statutory waiver. Arguably, if the 1986 General Assembly meant to change the situation by enactment of KRS 44.073(14), it should have so stated with statutory language that immunity, where it exists, is not waived by the purchase of liability insurance even where, as here, the legislation expressly directs its purchase. The meaning of the 1986 statutory changes remains undecided for another day when the statutory entity involved qualifies for sovereign immunity, thus making the question of waiver essential to the decision.

## III. CONCLUSION

Thus, we affirm the decision of the Court of Appeals, not on the basis of the reasons stated therein, but on the basis that the Kentucky Center for the Arts Corporation does not qualify for protection under the concept of state sovereign immunity expressed in our Kentucky Constitution § 231, and therefore the General Assembly cannot transgress rights guaranteed our citizens by the Kentucky Constitution in §§ 14, 54 and 241. This constitutional scheme prevents the General Assembly from extending state sovereign immunity to tort cases except where the sovereign immunity doctrine is preserved by § 231 of the Constitution.

The decision of the Court of Appeals is affirmed, but for the reasons stated in this Opinion.

COMBS, GANT and LAMBERT, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

VANCE, J., dissents by separate opinion in which STEPHENS, C.J., joins.

VANCE, Justice, dissenting.

At oral argument we were informed that the General Assembly of Kentucky makes a direct annual appropriation to the Kentucky Center for the Arts, and that the Kentucky Center for the Arts Building in Louisville, which is involved in this lawsuit, is owned by the Commonwealth of Kentucky. This lawsuit stems from an allegation of negligence in the failure to properly maintain a stair railing in this building owned by the Commonwealth. The briefs furnished to us do not discuss the question of whether a judgment, if one is obtained, could be enforced or whether the funds appropriated by the General Assembly to the Kentucky Center for the Arts would be subjected to the payment of any such judgment. There is also no discussion of whether the building itself could be subject to judicial sale to satisfy a judgment.

The last decision of this court on sovereign immunity held that the Louisville and Jefferson County Metropolitan Sewer District was a state agency entitled to the protection of immunity. *Louisville and Jefferson County Municipal Sewer District v. Simpson*, Ky., 730 S.W.2d 939 (1987). The sewer district did not receive any direct appropriation from the Commonwealth, nor did the Commonwealth have title to the property utilized by the district. It seems to me that the Commonwealth has a much closer and direct connection with the Kentucky Center for the Arts than it does with the Louisville and Jefferson County Municipal Sewer District, and thus the decision here represents a step in a different direction in a field in which this court has changed direction numerous times.

I am certain, however, that if a judgment in this case could be satisfied out of funds appropriated by the state or by a judicial sale of state property, the suit is truly one against the Commonwealth.

The record in this case is not complete enough for me to know whether either of these events is a possibility, but I believe we should be certain as to whether the Commonwealth might ultimately bear the burden of any potential judgment before we deny the availability of the defense of sovereign immunity.

STEPHENS, C.J., joins in this dissenting opinion.