313 S.E.2d 399 (1984)
John J. PRENDERGAST, et al.
v.
NORTHERN VIRGINIA REGIONAL PARK AUTHORITY.
Record No. 811472.
Supreme Court of Virginia.
March 9, 1984.
Hugh Nugent, Alexandria (Hart, Nugent & Ahearn, P.C., Alexandria, on briefs), for appellants.
Brien A. Roche, Fairfax (Doherty, Sheridan & Grimaldi, Fairfax, on brief), for appellee.
*400 Before CARRICO, C.J., and COCHRAN, POFF, COMPTON, STEPHENSON, RUSSELL and THOMAS, JJ.
THOMAS, Justice.
This appeal concerns the issues of immunity from tort liability and the statute of limitations applicable to a claim of inverse condemnation. John J. Prendergast and his partner, Gordon P. Peyton (hereinafter collectively referred to as Prendergast), own a building located in Alexandria known as the Law Building. Their building is located near Carlyle House, a historic structure owned by the Northern Virginia Regional Park Authority. Sometime prior to March 19, 1975, the Park Authority undertook the restoration of the 18th-century Carlyle House. This work involved, among other things, demolition of certain buildings near the Carlyle House and alteration of the landscape adjoining both the Carlyle House and the Law Building. Prendergast contends that on March 19, 1975, as a result of the restoration work, water began leaking into the lower level of the Law Building.
Prendergast filed suit on March 18, 1980, almost five years to the day from the discovery of the leak. The bill of complaint was in five counts. The first four sounded in tort. Count 1 alleged "a negligent breach of Defendants' obligations to Plaintiffs." Count 2 alleged "a continuing trespass upon Plaintiffs' property." Count 3 alleged "a continuing diversion of surface water." And, Count 4 alleged "the maintenance of a continuous nuisance." The final count sounded in inverse condemnation. It alleged an unlawful "taking or damaging of Plaintiffs' property without due process of law and without payment of just compensation."
The Park Authority filed a demurrer, a special plea of the statute of limitations, and a motion for summary judgment. One ground of the demurrer was that the Park Authority enjoys the tort immunity of the sovereign. The special plea and the motion for summary judgment were tied together; one of the allegations contained therein was that the claim asserted in Count 5 was governed by a three-year statute of limitations.
By letter opinion dated August 12, 1980, subsequently incorporated by reference into an order dated November 12, 1980, the trial court ruled on the demurrer. However, it specifically reserved judgment on the statute of limitations question. It sustained the demurrer as to Counts 1, 2, 3, and 4 on the ground that the Park Authority is an "arm" of the Commonwealth and is therefore generally immune from liability in tort. The court overruled the demurrer as to Count 5 on the ground that it stated a cause of action based on an implied contract. The court granted leave to plaintiffs to replead Count 5 "to conform to pleadings at law."
Pursuant to the court's permission to replead Count 5, plaintiffs filed a motion for judgment and petition for writ of mandamus. In Count 5 of the new pleading, Prendergast again alleged an unlawful taking or damaging without due process of law and without payment of just compensation. In its prayer for relief, Prendergast prayed that a writ of mandamus issue directing the Park Authority to file condemnation proceedings against the Law Building for the purpose of ascertaining just compensation. Thereafter, the court heard argument on the statute of limitations issue and ruled, in a December 29, 1980 letter opinion, that a three-year period of limitations applied and that the claim asserted in Count 5 was therefore barred by the statute of limitations.
On appeal, Prendergast contends that the trial court's rulings regarding Counts 1, 2, 3, 4, and 5 were in error. More specifically, regarding Counts 1, 2, 3, and 4, Prendergast submits that the Park Authority is not a governmental agency or arm of the Commonwealth and does not enjoy tort immunity. Regarding Count 5, Prendergast submits that a five-year statute of limitations applies instead of the three-year statute that was applied by the court.
In our opinion, the trial court erred in concluding that the Park Authority is an *401 arm of the Commonwealth. The trial court said the Park Authorities Act, Code §§ 15.1-1228 through 1238.1, was enacted as a direct legislative response to Article XI, Section 1 of the Constitution of Virginia which states that "it shall be the policy of the Commonwealth to conserve, develop and utilize its natural resources, its public lands, and its historical sites and buildings," and Article XI, Section 2 which authorizes the General Assembly to further such policy by the creation of "agencies of the Commonwealth or by the creation of public authorities." The trial court's assertion in this regard is mistaken. The Park Authorities Act predates the constitutional provision that is pointed to as the source of the Act. This fact is conceded by the Park Authority, yet the Park Authority argues that it makes no difference. We disagree. It is clear that the sole basis for the trial court's ruling is a misconceived set of circumstances. Where, as here, an incorrect premise leads to a wrong result, we must reverse.
Moreover, even if the constitutional provision had predated the Act, that circumstance alone would not be sufficient to permit the trial court to conclude that an entity created pursuant to the Act is an "arm" of the Commonwealth. Some policies contained in the Constitution are stated more specifically than others but this does not mean that whenever the General Assembly legislates with regard to a specific constitutional policy any entity ultimately created to implement that policy will by that fact alone be clothed in the tort immunity of the Commonwealth. Such a result would lead to a hodgepodge of governmental entities, some immune in tort and others not immune, depending, not on the nature of the entity, but on whether it can point to a statement in the Constitution that specifically relates to the work of the particular entity. Such a procedure to determine whether a given entity is an arm of the government would do violence to the carefully crafted considerations that have evolved, in the cases, for this purpose.
The correct approach is the one we have long employed in the Commonwealth: the attributes of the particular entity which seeks immunity must be examined to determine whether it is an "arm" of the Commonwealth. We employed this approach in VEPCO v. Hampton Red. Authority, 217 Va. 30, 225 S.E.2d 364 (1976), a case in which we concluded that the Hampton Redevelopment and Housing Authority was not an arm of the Commonwealth. The issue there was whether the housing authority was immune from liability in tort for the operation and maintenance of a housing project. We decided that it was not immune. On the question whether the housing authority was an arm of the Commonwealth, we considered it significant that the Housing Authorities Law did not, in and of itself, create the housing authority. We said that "local activation, optional with each locality" was required. 217 Va. at 32, 225 S.E.2d at 367. We also noted that once the housing authority came into being, it was subject to substantial local control.
The Park Authority was not directly created by the Commonwealth. It is a creature of one or more localities and is essentially subject to their control. This fact was noted by the trial court in its letter opinion and conceded by counsel in oral argument. Indeed, the trial court stated that it made its ruling "despite the fact that the language of the Park Authorities Act and the Housing Authorities Act are in many respects identical." Here we are compelled by facts, similar to those in Hampton Red. Authority, to reach a similar conclusion. We hold that under the facts and circumstances of this case, the Park Authority is not an arm of the Commonwealth.
Turning now to the inverse condemnation issue, we think the trial court correctly concluded that a three-year statute of limitations applied and that Prendergast's claim is time-barred. Prendergast argues that an inverse condemnation action is based on the Constitution, sounds neither in tort nor in contract, and is subject to a five-year statute of limitations. The Park *402 Authority argues, on the other hand, that inverse condemnation actions are based upon an implied contract and are subject to the shorter period of limitations. This issue was resolved in Burns v. Board of Supervisors, 218 Va. 625, 238 S.E.2d 823 (1977). There we endorsed the implied contract theory of inverse condemnation actions. We wrote as follows:
The owner whose property is taken or damaged for public use has a right to waive all other remedies and to sue upon an implied contract that he will be paid therefor such amount as would have been awarded if the property had been condemned under the eminent domain statute.
218 Va. at 627, 238 S.E.2d at 825. Once the trial court correctly concluded that the essence of Count 5 was an action based on an implied contract it follows that its application of the period of limitations contained in Code § 8.01-246(4) was proper. That provision says that "actions upon any unwritten contract, express or implied" shall be filed within three years next after the cause of action shall have accrued. We will therefore affirm the trial court's ruling as to Count 5.
In ruling on Counts 1, 2, 3, and 4 the trial court expressly reserved judgment on the question whether the Park Authority was engaged in a governmental versus a proprietary activity in restoring the Carlyle House. The sole basis of its ruling was that the Park Authority was an arm of the Commonwealth. We have held that ruling to be in error. Consequently, we will reverse that portion of the opinion concerning the Park Authority's immunity in tort and remand the case for further proceedings not inconsistent with this opinion.
Affirmed in part, reversed in part, and remanded.